## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Redacted Stored Communications Act, 18 U.S.C. § 2703(a), (c) & (d), Documents Pursuant to Standing Order No. 22-05 (BAH) | **Case No. 25-ml-9999** |

## NOTICE OF FILING REDACTED DOCUMENTS IN RELATION TO 21-ml-01047 UPON CLOSE OF INVESTIGATION

Pursuant to *Matter of Leopold*, D.D.C. Case No. 13-mc-00712, and Standing Order No. 22-05 (BAH), the government provides this Notice of Filing on the unsealed docket of the attached (see Attachment A) "Redacted Docket Materials," in 21-ml-01047, which consist of redacted versions of the following original docket entries:

- Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d) (Original ECF Dkt. No. 1)

- Proposed Order (Original ECF Dkt. No. 1-1)

- Signed Order (Original ECF Dkt. No. 2)

The items listed above constitute all the relevant documents to be unsealed upon the close of this investigation as set out in *Matter of Leopold*, D.D.C. Case No. 13-mc-00712.   In *Matter of Leopold*, D.D.C. Case No. 13-mc-00712, the Court addressed unsealing of several categories of sealed legal process related to closed investigations: "applications for warrants issued pursuant to the Stored Communications Act ('SCA'), 18 U.S.C. § 2703(a), SCA § 2703(d) orders, pen registers and trap and trace ('PR/TT') devices, *see id.* § 3123, and foreign requests for use of these investigative authorities, pursuant to Mutual Legal Assistance Treaties ('MLATs'), *see id.* § 3512(a)(2)(B)–(C), once those matters are closed."   2020 WL 7481037, ECF 69 at *1 (Dec. 17,

2020).   The Court noted that such unsealing could be accomplished by "fil[ing] redacted versions of any documents . . . on a given docket, and then . . . fil[ing] a motion to unseal the case docket indicating the matter is closed and identifying, by filed document number, the unredacted versions of the government-redacted documents to remain under seal."   *Id*. at \*3; *see also id*. at \*5 (contemplating a government "motion to unseal, indicating that a case is closed and signaling to the Clerk's Office to unseal the case," which motion will "identify each docket entry, *i.e.*, ECF number" to be unsealed, and which should remain sealed).[1]

---

[1] In connection with such unsealing, the D.C. Circuit noted that "the government and court must be able to redact documents in order to protect privacy and law enforcement interests," *Matter of Leopold*, 964 F.3d 1121, 1133 (D.C. Cir. 2020).   Specifically, the Court "ORDERED that the government redact the following information" from filings to be unsealed:

> (1) individuals' names, except for the name of a judicial officer who has issued an order;
> (2) dates of birth;
> (3) Social Security numbers;
> (4) financial account numbers;
> (5) telephone numbers;
> (6) street addresses;
> (7) email account addresses; and
> (8) any other information that directly or indirectly identifies the target of, or witness, investigator, informant, or other person of interest in, a criminal investigation, and regardless of whether the investigation ultimately resulted in criminal charges or a criminal conviction.

*See Matter of Leopold*, D.D.C. Case No. 13-mc-00712, ECF No. 71, slip op. at \*15-\*16 (Feb. 9, 2021).   In addition, in its *Matter of Leopold* ruling, the D.C. Circuit recognized that sealing – and thus, by extension, redactions could continue to be appropriate to "protect . . . law enforcement interests."   964 F.3d at 1133.

As these documents are hereby filed on the unsealed docket created for purposes of filings pursuant to *Leopold*, the attached redacted documents are now available to the public.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____

Mari A. Aponte
Trial Attorney
DC Bar Number 434421
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 300
Washington, D.C. 20530
(202) 305-9182 telephone
(202) 514-0080 facsimile
Mari.Aponte@usdoj.gov

3

# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR TWO** ██████████████████████ **SERVICED BY** ██████████████ ████ | ML No. 21-1047<br><br>**Filed Under Seal** |

**Reference:**     **DOJ Ref.** ████████████     **Subject Accounts:** ████████████████████
██████████████████████

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel,

respectfully submits under seal this *ex parte* application for an Order, pursuant to 18 U.S.C.

§§ 2703(d) and 3512(a), and ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ to execute a request from █████   The proposed Order

would require ████████████████ ("PROVIDER"), an electronic communication service

and/or remote computing service provider located in ████████████ to disclose certain

records and other information pertaining to the PROVIDER account(s) associated with ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ as set

forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.

The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order.  In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.      ████████████████████ this Court has jurisdiction to issue the proposed Order. ████████████████████████████████████

████████ In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512."  18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3.      Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

2

18 U.S.C. § 3512(a)(1).  This application to execute █████ request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application.  The undersigned has reviewed the request and has confirmed that it was submitted by ████████████ in connection with a criminal investigation and/or prosecution.

4.      A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.      ████████████ are investigating an unknown suspect(s) for unauthorized computer access, computer fraud, and ████████████████████████ ████████████ which occurred from ██████████ through ██████████ in violation of the criminal law of ██████████████████████ ████████████████████████████████████████ A copy of the applicable laws is appended to this application.  The United States, through the



---

[1]  The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

Office of International Affairs, received a request from ▮▮▮▮ to provide the requested records to

assist in the criminal investigation and/or prosecution. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6.     6.     According to ▮▮▮▮▮▮▮▮▮▮ on ▮▮▮▮▮▮▮▮ one or more

unidentified individuals (the "Suspect(s)") gained unauthorized access to ▮▮▮▮▮▮▮▮▮▮

management server of a ▮▮▮▮▮▮▮▮▮▮ company located in ▮▮▮ ("Victim Company

1"). The Suspect(s) then transferred ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from Victim Company 1's ▮▮▮▮▮▮▮▮

management server.

7.     On ▮▮▮▮▮▮▮ Victim Company 1 reported the incident to ▮▮▮▮▮▮

▮▮▮▮▮▮

**Tracing** ▮▮▮▮▮▮▮▮▮▮

8.     Using ▮▮▮▮▮ analysis, ▮▮▮▮▮▮▮▮ traced ▮▮▮▮▮▮▮ the

Suspect(s) transferred from Victim Company 1 and confirmed that between ▮▮▮▮▮▮ and

▮▮▮▮▮▮ the Suspect(s) transferred approximately ▮▮▮▮▮▮▮▮▮▮▮▮ The

Suspect(s) also transferred approximately ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ to other ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ also found that ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ had been transferred to multiple ▮▮▮▮▮▮▮▮▮▮ through other

▮▮▮▮▮▮▮▮▮▮▮▮▮ are investigating these ▮▮▮▮▮▮▮▮▮

to identify the Suspect(s).

9.     Victim Company 1 reported that a portion of the illegally transferred

████████████ was transferred to ███ accounts (the "Accounts") managed by ████████████ ██████████████████████ On ████████████████ provided ██████████████ with the communication logs for the Accounts. ██████████████ reviewed the logs and concluded that the person(s) who accessed the Accounts are likely to be the Suspect(s) or accomplices. The following ██████████ were used to access the Accounts:

- ████████████████████████████████████████████
  ████████████████████████

- ████████████████████████████████████████████
  ████████████████████████████

- ████████████████████████████████████████████
  ██████

- ████████████████████████████████████████████
  ██████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████

- ████████████████████████████████████

10.    ██████████████████ analyzed the transaction history of the stolen ██████████ and determined that the entire amount was transferred to a single account managed by ██████████ ████████████████████████████████████████ and transferred to ██████████████ ████████████ In addition, approximately ██████████████ was transferred to the same ████████████████████████ from five different accounts managed by ██████████ On ██████████ ████████████████ provided the account information and logs for those ███ accounts to ██████████



███████

11.     ████████████ analyzed the ██████ account records and identified multiple ████████ used to access the accounts, including: ███████████████████

███████████████████████████████████

**Investigating the Intrusion**

12.     ████████████ conducted a forensic analysis of Victim Company 1's servers and interviewed several Victim Company 1 employees to determine how the Suspect(s) gained access to Victim Company 1's ████████ management server. ████████████ discovered that from around ████████ to the breach in ████████ multiple Victim Company 1 servers had been infected with a computer virus which enabled the ████████ management server, ██████████████████████████ ████████████████ to be remotely commanded and controlled by the Suspect(s). As explained below, ████████████ believe the virus was delivered in ████████ sent to a Victim Company 1 employee.

**Analysis of Victim Company 1's Servers**

13.     ████████████ analyzed images of Victim Company 1's servers and determined that the Suspect(s) had accessed the ████████ server, which served as a connection point to Victim Company 1's other servers, including its ████████████ server. When ████████████ reviewed the connection logs of the ████████ server, they determined that overseas ████████ were used to access that server multiple times between ████████ and ████████████ determined that ████████████ that were not used in Victim Company 1's normal business operations had been ████████████ to establish a communication with the ████████ server ████████████████████



██████████████████████████████████████████████

██████████████████████████████████████████ believe the

Suspect(s) were using these communications to test their ability to remotely access and control

Victim Company 1's servers.

14.       ████████████ also examined an image of Victim Company 1's ████████

████████████████ server and found traces of two suspicious files that had been deleted on

████████████████████████ immediately after the Suspect(s) started transferring

██████████████████████ analyzed the suspicious files and found that one file

read configuration information from the other file and communicated with ████████████

██████████████████

15.       ████████████ also analyzed an image of the ████████ server provided by

Victim Company 1 and found that between ██████████ and ██████████ a remote desktop

connection had been established three times, through a route other than the normal route, at the

same time the ████ server was attempting to connect to the ████████ server.  In addition, a

malicious program was stored and executed on the ████████ server, and connections from the

████████ server to the ████████ server had been established multiple times on ████████

████████████████ believe that each of these connections and attempted connections was made

by the Suspect(s) in an attempt to test the ability to remotely access and control Victim Company

1's servers.

16.       ████████████ also analyzed Victim Company 1's firewall communication

logs and determined that Victim Company 1's ████ had established communications with

██████████████ The communications were not those that the company usually used in

business.  The destination ██████████ of the suspicious communications and ████████████

7

██████████████████████████████████████████████

████████████████████████████████████████████████████

believe that each of these suspicious communications was made by the Suspect(s) in an attempt
to test the ability to remotely access and control Victim Company 1's servers.

### Source of the Virus

17.        ████████████████ interviewed Victim Company 1 employees and analyzed
their computers and found that multiple employees received targeted ████████████████
████████ believe that one of those ████████ sent to Employee A on ████████████ was the
source of the virus.  Employee A told ████████████████ that he accessed ████████ contained in
████████ sent by someone impersonating a Victim Company 1 supervisor and downloaded ████████
████████████████ believe the file included malware that enabled the Suspect(s) to access
Victim Company 1's network and steal credentials for, and gain unauthorized access to, the ████
████ server, and eventually the other Victim Company 1 servers, including the ████████████████
████ server.

18.        ████████████████ analyzed Employee A's computer and determined that, on
████████████████████████ Employee A executed a file, and his computer automatically
established a connection with an external network through ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████ Accordingly, ████████████████ believe the Suspect(s) created the
████████████████████████████████████████ for the sole purpose
of conducting criminal activity.

19.        ████████████████ also analyzed the file that Employee A executed and

confirmed that, on ██████████████████████ when Employee A restarted his computer, it automatically established a connection with ████████████ through another ████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████ Accordingly, ████████████ believe the Suspect(s) created ██████████████████████████████ for the sole purpose of conducting criminal activity.

20.    ████████████ further determined that, at the time Employee A's computer was communicating with ████████████ it was also communicating with ████████

████████ Thus, ████████████ believe the Suspect(s) used ████████████████

██████████████████████████████████████████████████████████

21.    ████████████ also determined that on ██████████████████

████ Employee A's computer automatically initiated a communication from Victim Company 1's ████ server to ████████████ via ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████ Accordingly, ████████████████ believe the Suspect(s) created ██████████████████████ for the sole purpose of conducting criminal activity.

22.    ████████████ also analyzed Victim Company 1's ████████ server logs and found that the same script was executed to infiltrate the ████████ server on ████████████ and ████████████ Therefore, ████████████ believe that the person who sent the targeted ████████ to Employee A is the Suspect(s) who gained unauthorized access to Victim Company 1's

9

█████████ management server on ████████ and transferred approximately █████████

███████████████████████████████████████ to various

other accounts.

**Other Compromises and Attempted Compromises**

23.     ███████████████ also determined that Employee B received a targeted

█████ from a sender impersonating a Victim Company 1 supervisor.  On ████████████

Employee B accessed a ████████ contained in ████████ and downloaded ████████

██████████ identified ██████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████ Based on the

similarities between the █████ received by Employees A and B and the use of ████████████

█████████████ believe the Suspect(s) created ████████████████and the

███████████████ for the sole purpose of conducting criminal activity.  However,

█████████████ did not discover in Employee B's computer any trace of intrusion to the

███████████ servers which may have led to the illegal ████████ transfers.

24.     ███████████████ examined ████████ of ████████ sent to Employee B and

found that it was configured to ████████████████ at ████████████████████

when ██████████████████

25.     Additionally, █████████████████ analyzed the file that Employee B executed and

found that his computer automatically established a connection with ██████████████

██████████████████████████████

███████████████████████████████████

10

███████████████████████████████████████ Accordingly, ████████████████ believe the Suspect(s) created ████████████████████████ ████████████████ for the sole purpose of conducting criminal activity.

26.     Employee B reported that he received a second targeted ████ on ████████ but he suspected the ████ was malicious and did not ████████ contained therein. ████████ ████████ determined that the ████ was sent from ████████████████████████████ ████████████████████

27.     Employee B further reported that he also received ████████ from a person using ████ account ████████████ who identified himself as ████ a member of ████ ████████ who wanted to form ████████████ with Victim Company 1. Employee B subsequently exchanged ████████████ with ████ On ████████████████ sent Employee B a targeted ████ containing ████ with the same destination as ████ Employee A received on ████████████ which led to Employee A's computer being infected with a virus. The person identifying himself as ████ believed to be the Suspect(s), used ████████████ ████████████ which is very similar to ████████ used by a legitimate ████████████ ████████████ believe the Suspect(s) created ████████████████ to dupe Employee B into believing that the ████ was sent from the actual ████████████ in order to penetrate the Victim Company's n 1etworks and steal ████████

28.     On ████████████ sent Employee B ████████ providing his ████████ ████████████████ Employee B and ████ communicated via ████████████████ on ████████████

29.     Pursuant to a search and seizure warrant, ████████████ obtained subscriber records for ████████████████ and found that it was registered using ████████

11

████████████████████████████

30.     ██████████████ also analyzed Victim Company 1's █████████████ and found that Employee B's ████ account had been accessed from ███████ outside ████ on three occasions in █████████ Employee B reported that she did not access her █████ from outside ███████████████ also determined that Employee B's ██████ account had been used to send ██████████ on ███████████ to other Victim Company 1 employees. That ██████ contained ███████████████████████████ that had been set to communicate with ████████████████████████████████████

████████████████████████████████████████████

██████ Accordingly, ██████████████ believe the Suspect(s) created █████████ ████████████ for the sole purpose of conducting criminal activity.

31.     ███████████████ also interviewed Victim Company 1 Employee C who stated that he received ██████████ from someone impersonating a Victim Company 1 supervisor between ██████████ and ████████████ Employee C found ████████ suspicious and did not access █████████ contained therein. ██████████████ analyzed █████████ and identified ████ to the following ██████████████████ that █████████████ believe the Suspect(s) created for the sole purpose of conducting criminal activity: ██████████████████████████

████████████████████████████████████

32.     Employee C further reported that he subsequently received two additional targeted ████████ On ███████████ the Suspect(s) sent ████████ containing ██████ that █████████ determined was configured to communicate with ██████████████████ ██████████████████████████████ the Suspect sent ██████████ containing ████that █████████████ determined was configured to communicate with ████████████

██████████████████████████████████████████ the same ██████ the Suspect(s) used to send a targeted ██████ to Employee B on █████████ Employee C found the █████ suspicious and did not access █████ provided therein.

33.      ██████████████ also interviewed Victim Company 1 Employee D, who said he received a targeted ██████ disguised as an interview request from a person claiming to be a reporter (believed to be the Suspect(s)s), using █████████████████████████████ ██████████████████████ on ████████████ Employee D recognized that it was a targeted ██████ and did not access ████████ contained therein.

34.      █████████████ analyzed████████ and determined██████ had been configured to communicate with █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ is only ██████████ different from████████████ used by a legitimate publication. ████████████ believe the Suspect(s) created ███████████████████████████████ to mislead Employee D for the purpose of penetrating Victim Company 1's networks and stealing ████████████

35.      Through open sources, ██████████████ identified the contact ███████████ of the registered user for █████████████████████████████████

36.      ██████████████ also interviewed Victim Company 1 Employee E who said he received ████████ from someone impersonating a Victim Company 1 supervisor on ██████████ but he did not access ████████ in █████████████████████ analyzed ████████ and ████████████████████████████████████████████████ also analyzed ████████████ and found it was configured to █████████████ at ████████████████████ when ██████████████

37.         ████████████ interviewed seven additional Victim Company 1 employees and determined that on ███████████████████████████████ they each received the same targeted ████ sent from an individual (believed to be the Suspect(s)) impersonating Victim Company 1's President.  None of the employees accessed ████████

38.         ████████████ analyzed the ████ and found ████ that contained two files, one of which would infect the user's computer with a virus upon executing the file. ████████ ████████ determined that the file was created by a computer with ████████████ ████████████████████████████ further determined that ████████ was configured to communicate with ██████████████████████████████████████████████ ████████████ believe the Suspect(s) created █████████████████████████ for the sole purpose of conducting criminal activity.

**Post-Theft Targeted ████████ from the Suspect(s)**

39.         Despite having successfully stolen approximately ████████████ ████████████ the Suspect(s) continued the campaign to compromise Victim Company 1's networks.  Specifically, Employee F reported to ████████████ that he received a targeted ████ disguised as an announcement of a rule change for ████████████████████ ████████ on ████████████████████ Employee F accessed ████████ in ████████ and downloaded a ████████ containing a virus. ██████████████ analyzed ████████ in ████████ and found that it been configured to communicate with ████████████████████ ██████████████████████ Because Employee F received a targeted ████ containing a ██████████████ disguised as a legitimate ████████ but linked to a server that stored a virus, in the same way that Employees A through E were targeted, ████████████████ believe the Suspect(s) created and deployed █████████████████ for the sole purpose of continuing

14

to exploit Victim Company 1's servers.

40.        Employee A also reported to ████████████ that he received a targeted ████

████ disguised as instructions for removing malware on ████████████████████████

from an individual using ████ account ████████████████ Employee A did not access

████ in ████████ but ████████████ analyzed ████████████ and determined that

████████ in ████████ was associated with ████████████████ which automatically

directed the user to ████████████████████ where a virus was stored. ████████

████████████ believe that the Suspect(s) created ████████████████████████ to send

targeted ████████ in order to launch a second attack against Victim Company 1 while the company

was still struggling with the aftermath of the first offense.

**A Second Victim**

41.        The Suspect(s) used similar tactics to target a separate ████████████████

company ("Victim Company 2"). According to ████████████ on ████████████ three

employees of Victim Company 2 received ████████ with ████████████████████

████████████ sent by a person who impersonated a Victim Company 2 director. The ████ was

detected and blocked by Victim Company 2's security system, so the employees did not access

████████████████ and their computers were not infected with a virus.

42.        Nevertheless, ████████████ analyzed ████████████ and determined that

they were sent on ████████████ from ████████████████████████████████

████████████████████████████ Each of the ████████████ contained ████████████

with ████████████████████████

43.        ████████████ investigated ████████████████████████ and

determined that the file for ████████████████████ was created by a computer using

15



████████████████████████ which is the same ██████████ assigned to the computer that created the malicious file the Suspect(s) sent to Victim Company 1 employees on ████████ as discussed above. Accordingly, ████████████████ believe the same individual(s) (the Suspect(s)) targeted both Victim Company 1 and Victim Company 2 and that the Suspect(s) ████████████████████████████ for the sole purpose of conducting criminal activity.

**The Accounts**

44.        ████████████████████████████ are serviced by PROVIDER.

Accordingly, ████████████████ now seek certain records regarding ██████████████

████████████████████████████████████████████

████████████████████████ from PROVIDER in an effort to locate and

identify the Suspect(s).

## REQUEST FOR ORDER

45.        The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help ████████████████ identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

46.        The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for two years from the date of the Court's Order. *See* 18 U.S.C. § 2705(b); 18 U.S.C. § 3512(a). This Court has

16

authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic

communications service or remote computing service to whom a warrant, subpoena, or court

order is directed, for such period as the court deems appropriate, not to notify any other person of

the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).   In addition,

this Court has the authority under 18 U.S.C. § 3512(a) to issue "such orders as may be necessary

to execute a [foreign] request," including an order to protect the confidentiality of the foreign

request here.   18 U.S.C. § 3512(a)(1); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

47.        In this case, the proposed Order seeks information relevant to establishing the

illegal activity under investigation and identifying the individual(s) responsible.  Accordingly,

disclosure may reveal the existence, scope, and direction of ▮▮▮▮ ongoing and confidential

investigation.  Once alerted to this investigation, the potential target(s) could be immediately

prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid

future detection, and otherwise take steps to undermine the investigation and avoid future

prosecution.  In particular, given that they are known to use electronic communication and

remote computing services, the potential target(s) could quickly and easily destroy or encrypt

digital evidence relating to their criminal activity.  Notification could also result in the target(s)

traveling to countries from which they cannot be extradited.

48.        Therefore, based on the foregoing, there are reasonable grounds to believe that

notification of the existence of this Order would result in flight from prosecution, destruction of

or tampering with evidence, or other serious jeopardy to this investigation.  *See* 18 U.S.C.

§ 2705(b)(2), (3), (5).

49.        In addition, the two-year time period for preclusion of notice is reasonable.  As

explained above, these documents discuss an ongoing criminal investigation pursuant to foreign

law in the requesting country.  Foreign investigations are often lengthy, and the United States

does not have ready access to the status of such investigations.  Additionally, during the two-year

time period, the United States will need to serve the production Order on PROVIDER, obtain

PROVIDER's responsive documents, resolve any issues or questions regarding the production,

and send the documents to the Central Authority for mutual legal assistance requests in █████

█████ Central Authority then will have to provide the documents to the investigating judge,

prosecutor, and/or investigator assigned to the particular matter, who will need time to review the

information provided and pursue any investigative leads, prior to disclosure of the specific

assistance sought by █████████████ to the account holder(s).

50.     Accordingly, this Court should command PROVIDER not to notify any other

person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the

existence of the proposed Order for a period of two years (commencing on the date of the Order),

unless the period of nondisclosure is later modified by the Court.

51.     In this matter, the United States also requests that the instant Application and the

Order be filed under seal.  The Court has the inherent power to seal court filings when

appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16

(D.C. Cir. 1980) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More

particularly, the Court may seal the Application and Order to prevent serious jeopardy to an

ongoing criminal investigation when such jeopardy creates a compelling governmental interest in

confidentiality.  See *Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  In

addition, the Court is authorized to issue orders necessary for the execution of a foreign request,

including an order to seal the instant Application and Order, to protect the confidentiality of the

foreign criminal investigation. ██████████ 18 U.S.C. § 3512(a); *see also In re Letter of Request from the Government of France*, 139 F.R.D. at 592. For these reasons, the United States has a compelling interest in confidentiality to justify sealing the Application and Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

██████████

Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., ████████
Washington, D.C. 20530

██████████

**Relevant Provisions** 

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA PURSUANT
TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR
TWO ███████████████████████████████
SERVICED BY ████████████████████
████

ML No. 21-1047

**Filed Under Seal**

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(d) and

3512(a), and ████████████████████████████████████████████████

████████████████████████████████████████████████████████

(2003), requesting that the Court issue an Order requiring ████████████████████████

("PROVIDER"), an electronic communication service and/or a remote computing service

provider located in ████████████████ to disclose the records and other information described in

Attachment A to this Order.

The Court finds that the United States has offered specific and articulable facts showing

that there are reasonable grounds to believe that the records or other information sought are

relevant and material to an ongoing criminal investigation. Furthermore, the Court determines

that there is reason to believe that notification of the existence of this Order will seriously

jeopardize the ongoing investigation, including by giving targets an opportunity to flee or

continue flight from prosecution, and destroy or tamper with evidence. *See* 18 U.S.C.

§ 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 2705(b) and 3512(a), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of two years (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate foreign and domestic law enforcement authorities.

_____
Date

_____
Robert B. Collings
United States Magistrate Judge

# ATTACHMENT A

## I.   The Accounts

The Order applies to certain records and information relating to any customer or subscriber account ("Accounts") 

and any preserved data and/or preservation numbers associated therewith.

## II.   Records and other information to be disclosed

### A.  Information about the customer or subscriber of the Accounts

For each Account that meets the definition in Part I of this Attachment A, ▮▮▮▮▮

▮▮▮▮▮▮ ("PROVIDER") is required to disclose to the United States the following

records and other information, if available, constituting information about the customer or

subscriber of the Accounts:

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3. Local and long distance telephone connection records (including records of text messages sent and received);

4. Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses);

7. Other subscriber numbers or identities (including the registration IP address), including any current or past accounts linked to the Accounts by telephone number, recovery or alternate e-mail address, IP address, or other unique device or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Accounts (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Accounts for the time period from ███████████ to and including ███████ constituting all records and other information relating to the Accounts (except contents of communications), including:

1. Records of user activity for each connection made to or from the Accounts, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination IP addresses; and

2. Information about each electronic communication sent or received by the Accounts, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination e-mail addresses, IP addresses, and telephone numbers), and any other associated header or routing information.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR TWO ███████████████ SERVICED BY ████████████ ████ | ML No. 21-1047 <br><br> **Filed Under Seal** |

## ORDER

 The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(d) and

3512(a), and ████████████████████████████████████████

████████████████████████████████████████████████

████ requesting that the Court issue an Order requiring ███████████████

("PROVIDER"), an electronic communication service and/or a remote computing service

provider located in ███████████████ to disclose the records and other information described in

Attachment A to this Order.

 The Court finds that the United States has offered specific and articulable facts showing

that there are reasonable grounds to believe that the records or other information sought are

relevant and material to an ongoing criminal investigation.  Furthermore, the Court determines

that there is reason to believe that notification of the existence of this Order will seriously

jeopardize the ongoing investigation, including by giving targets an opportunity to flee or

continue flight from prosecution, and destroy or tamper with evidence.  *See* 18 U.S.C.

§ 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), that PROVIDER shall, within ten days of receipt of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 2705(b) and 3512(a), that PROVIDER shall not disclose the existence of the application of the United States or this Order of the Court to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of two years (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate foreign and domestic law enforcement authorities.

2021.12.2
1 17:06:53
-05'00'

_____
Date

Robert B. Cullingr
United States Magistrate Judge

2

**ATTACHMENT A**

## I.     The Accounts

The Order applies to certain records and information relating to any customer or
subscriber account ("Accounts")
and any preserved data and/or preservation numbers associated therewith.

## II.     Records and other information to be disclosed

### A.  Information about the customer or subscriber of the Accounts

For each Account that meets the definition in Part I of this Attachment A, ███████
██████████████ ("PROVIDER") is required to disclose to the United States the following
records and other information, if available, constituting information about the customer or
subscriber of the Accounts:

1.  Names (including subscriber names, user names, and screen names);

2.  Addresses (including mailing addresses, residential addresses, business addresses,
    and e-mail addresses);

3.  Local and long distance telephone connection records (including records of text
    messages sent and received);

4.  Records of session times and durations, and the temporarily assigned network
    addresses (such as IP addresses) associated with those sessions;

5.  Length of service (including start date) and types of service utilized;

6.  Telephone or instrument numbers (including MAC addresses);

7.  Other subscriber numbers or identities (including the registration IP address),
    including any current or past accounts linked to the Accounts by telephone
    number, recovery or alternate e-mail address, IP address, or other unique device
    or user identifier; and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to the Accounts (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Accounts for the time period from ███████████ to and including ███████████ constituting all records and other information relating to the Accounts (except contents of communications), including:

1. Records of user activity for each connection made to or from the Accounts, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination IP addresses; and

2. Information about each electronic communication sent or received by the Accounts, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination e-mail addresses, IP addresses, and telephone numbers), and any other associated header or routing information.